CENTRAL TRUST CO. OF NEW YORK v. EAST TENNESSEE LAND CO. et al.

SCHUMACHER et al. v. SAME.

(Circuit Court, E. D. Tennessee, S. D.    May 26, 1902.)

No. 430.

1. CORPORATIONS—PROCEEDING IN INSOLVENCY—SUIT BY RECEIVER TO COLLECT ASSETS.

Where the court made an order authorizing its receiver, appointed for the property of a corporation, to prosecute suits against certain stockholders for the benefit of such creditors of the corporation as should come in and give security for the costs and expenses of such suits, the defendants therein have no standing to contest the right of a creditor to come in under such order, after his security has been accepted by the court, and costs and expenses have been incurred, on the ground that he acquired his claims against the corporation by assignment after the order was entered.

**2. SAME—ENFORCEMENT OF CLAIM AGAINST PROMOTERS.**

A creditors' suit and a foreclosure suit against an insolvent corporation were consolidated, and the receiver appointed therein was authorized to bring suits against certain of the promoters of the corporation to recover sums which it was charged they had wrongfully obtained from it at the time of its organization. Such suits were prosecuted to a final determination in favor of the receiver in the courts of another state. Meantime certain stockholders and bondholders of the corporation organized a new corporation for the purpose of buying the real estate of the old, which constituted its principal asset, and was covered by the mortgage, at the foreclosure sale, and such purchase was made at a public sale open to all bidders. The new company exchanged its stock for the stock and bonds of the old on certain terms and conditions, the bondholders being required to assign their claims against the old company. *Held*, that the questions whether the new company was merely a reorganization of the old, and whether the assignment of such claims to it operated as an extinguishment, concerned only stockholders and creditors of the old company, and did not affect the liability of the defendants in the suits by the receiver, the claims against them being assets of the old company. not sold with its real estate, but which were collectible for the benefit of its creditors.

**8. SAME—LIABILITY OF PROMOTERS.**

Promoters of a corporation occupy a trust relation to it, and will not be permitted to make a secret profit on property which they obtained an option to purchase, for the sole purpose of transferring the same to the corporation in payment of their stock subscriptions; and they are liable to the corporation or its creditors for the difference between the price which they received for such property from the corporation and the price at which they purchased it, without regard to its actual value.

In Equity. In the matter of the intervening petition of Joseph R. Leeson and John Hopewell, Jr. On motion for a preliminary injunction.

Jerome Templeton and J. J. Vertrees, for petitioners.

Russell & Winslow, for East Tennessee Land Company, the receiver, and Rodes.

R. B. Cassell, for Hendricks.

Before SEVERENS, Circuit Judge, and THOMPSON, District Judge.

SEVERENS, Circuit Judge. The prayer of the petition that leave be granted to file it as an intervention in the above-entitled consolidated causes seems proper, and is granted.

The East Tennessee Land Company was organized under the laws of Tennessee on May 25, 1889, with an authorized capital stock of $3,000,000, two-thirds of which was issued; and it issued and sold $1,000,000 of bonds, secured by a mortgage of its possessions, which comprised a very extensive area, more than 300,000 acres of lands in Eastern Tennessee. The promoters of the corporation, among whom were these petitioners, Leeson and Hopewell, took large profits from the corporation at the time of its organization, through a scheme concocted by them, whereby an immense area of land, which had

¶ 3. See Corporations, vol. 12, Cent. Dig. §§ 98, 99.

Acts of corporators and promoters, see note to Yeiser v. Paper Co., 46 C. C. A. 576.

been bought up for the purpose, and almost nominal down payments made therefor, was unloaded upon the company for many times its cost in exchange for its stock. By 1893 the company had contracted a large floating debt also, and in the financial depression of that year it was found that the company could not pay its debts; in fact, it was insolvent. On November 18th of that year a general creditors' bill was filed in this court against the company, stating its insolvency, asking to have its assets administered, and praying for a receiver. A receiver was appointed. On March 23d of the following year the Central Trust Company of New York, the trustee in the mortgage above mentioned, filed in this court its bill for foreclosure. The two causes were consolidated, and have proceeded as one with a joint receivership. In May, 1895, this court, being informed by a petition of the receiver that these petitioners, Leeson and Hopewell, had obtained a considerable amount of the stock of the company without paying for it, and under circumstances indicating fraud in its procurement, passed an order authorizing the receiver to sue these petitioners in the courts of Massachusetts, where they resided, "upon their alleged liability upon said stock subscriptions," and upon all matters connected with or in any wise affecting such stock subscription, in his own name, or that of the company, or of both. Separate suits were begun by the receiver in the superior court of Suffolk county, in Massachusetts. Both suits were contested. The controversy was twice carried from that court to the supreme judicial court, and every defense which these petitioners were able to present against a decree holding them liable to the East Tennessee Land Company for their alleged fraud in the procuration of its stock was considered, and found insufficient. It is wholly unnecessary to go into greater detail of the suits in Massachusetts, since it is quite sufficient to say that in suits founded substantially upon the order of this court the liability of the defendants in respect to the matters referred to in such order has been established by the decision of the highest court of that state, and the measure of damages has been ascertained by a report of the master to the court of first instance, confirmed by the court, all things having been done preparatory to the entry of the final decree. We are informed by the petition that at the request of the petitioners the court in Massachusetts in which those suits are pending has consented to postpone the entry of the decrees in order to enable them to make an application to this court for an order restraining the receiver from the further prosecution of those suits upon the grounds and for reasons presently to be stated. Thereupon they have presented their petition here for the relief mentioned. After stating the foregoing matters as construed by petitioners, and other matters not now necessary to be referred to, the petition states that subsequent to the commencement of the suits in Massachusetts this court made an order suspending their further prosecution, and made a further order of reference to the master to ascertain and report the debts and assets of the East Tennessee Land Company; and that from such report it appeared that its debts amounted to a considerably larger sum than its assets, estimated upon the most liberal basis.

The assets consisted almost wholly of lands mortgaged for the security of the bondholders. It is further stated that this court thereupon ordered the receiver to proceed with the suits against the petitioners in Massachusetts for the benefit of such of the creditors as should come in and give security for the costs and expenses of such suits, the trustee in the foreclosure case having declined to be responsible for their prosecution; and that certain creditors gave such security, and that the suits are being prosecuted in their interest. These allegations are, in the main, true, as the court knows from the judicial notice it is required to take of the proceedings in the principal causes. Thereupon further allegations are made in the petition of matters relied upon for the relief prayed, and in connection therewith it will be most convenient to take notice of other facts, as well as of modifications of the facts stated, in order that the grounds of our decision may be comprehended. Within the time limited by the court for the coming in and giving security by the creditors, the Harriman Land Company, claiming to be the owner of obligations of the East Tennessee Land Company to the amount of $1,224,038, acquired in part before and partly by assignment after the making of the last-mentioned order, appeared, and filed its security bond, which was approved. One Rodes, claiming to be a creditor by assignment to the amount of $10,584, filed his security bond, which was likewise approved. Hendricks, another creditor to the amount of $11,729, also gave like security. It is claimed by counsel for the petitioners that in the case of the Harriman Land Company, so much of its claim as was acquired from other creditors subsequent to the making of the order directing the receiver to proceed with the suits in Massachusetts, they were not within the scope of the order. But we think that the privilege may justly be regarded as having been incident to the claims, and that the assignee might exercise the privilege of the assignor; and, although there has been no express declaration to that effect by this court, that construction has been impliedly sanctioned by it, since the security has been allowed to be taken and the costs and expenses of the suits to be incurred; and these petitioners have no standing on which to contest the propriety of such recognition. The claims held by the Harriman Land Company, as well as those held by Rodes and Hendricks, were adjudged to be valid obligations of the East Tennessee Land Company by the general decree of this court passed down February 27, 1897. Some effort is made in the brief of the counsel to show that part of Hendricks' claim is duplicated in that of Rodes, since Rodes claims as assignee of the same persons as those for whom Hendricks claims as trustee. We infer, however, that the obligations are not the same; but the matter is not large, and our decision in regard to the Harriman Land Company's claim renders it unnecessary to determine for present purposes whether there is a duplication in the Rodes and Hendricks claims.

The main reliance of the petitioners is put upon certain other alleged facts, which will now be recited. Some time after the commencement of these suits against the East Tennessee Land Company, and when the insolvency of the company had been ascertained,

certain stockholders and bondholders, with a view to save what they could from the wreck, concocted a scheme for the organization of another company, to be in a position to buy the lands of the East Tenesee Land Company, if, as seemed inevitable, they should go to public sale under the decree of this court in these causes. That scheme contemplated the formation of a corporation under the laws of New Jersey, and that those who had been stockholders or bondholders of the East Tennessee Land Company might come in and exchange their stock or bonds for stock in the new company upon certain terms and conditions. But there was no participation in this scheme by any action taken by or on behalf of the East Tennessee Land Company, nor was any provision made for the payment of its debts. The bondholders were allowed to use their claims in payment for stock in the proposed new company upon assigning their claims to the latter. The Harriman Land Company was formed in New Jersey in fulfillment of the scheme, a large part of those who were stockholders or bondholders in the East Tennessee Land Company joining in it. Among other things, a committee was appointed to attend to the purchase of the lands of the East Tennessee Land Company when they should be offered for sale. When the lands were offered for sale under the general decree of February 27, 1897, they were bid off by those who were employed in behalf of the Harriman Land Company. The sale was an open one, and was made in the usual manner. It is true it realized but a small sum,—only about $70,000,—but none of many other parties who were interested in what it should bring made a better bid, or asked to have the same made, in any other way than that pursued, or complained that the price paid was inadequate. It is claimed that the Harriman Land Company was a reorganization of the East Tennessee Land Company, and the promoters of the Harriman Land Company in their proceedings called it a reorganization. In some of their features the proceedings resembled a reorganization, but in its essential character it seems to have lacked the requisites of a reorganization, as that term is usually understood, and to have resulted rather in a new and entirely independent corporation. The East Tennessee Land Company continues as before, shorn of nearly all its available assets, it is true; but its debts are not paid, and nothing has been done which can or ought to disable the court from gathering in its assets and appropriating them to the payment of its debts. The demands for which these petitioners were sued in Massachusetts are a part of such assets, and they rest upon a strong and clear ground of equity and right. They are for the secret and fraudulent abstraction of its substance at the time when it was put upon its feet. This wrong was part of similar transactions, which debilitated the corporation in its infancy, and, we have no doubt, contributed largely to its downfall. It is said in the brief of counsel for the petitioners that this court ought to infer from the circumstances that the Harriman Land Company was intended to succeed the old, and it is conceded it is a question of intention when the facts do not unequivocally determine it. That being so, it is incredible that the parties concerned intended to simply transform the old corporation into the new one. But it is

unnecessary to pursue that subject. Only the creditors and stockholders of the old company have any interest in a question of that sort. The petitioners, by their petition, claim no other standing than that of simple debtors of the East Tennessee Land Company. If one of them, as stockholder, has availed himself of the privilege given by the Harriman Land Company, it in no wise affected his separate liability for the tort he had committed upon the East Tennessee Land Company.

It is upon the notion that the Harriman Land Company is the mere successor of the East Tennessee Land Company, which has taken over its assets, that the present contention is founded, and it is contended that, in consequence of what has occurred, the obligations due to the East Tennessee Land Company are "extinguished." But the assets here in question remain the assets of the East Tennessee Land Company. The petitioners are in no position to start a controversy as to whether the assignment of the claims of creditors ought, as between other parties, to have a different consequence from that which it was intended to have; that is to say, an assignment, and not an extinguishment. They have themselves neither done nor suffered anything on which any equity arises for discharging them, and the case is barren of any circumstances which ought to relieve them from liability. The condition upon which the receiver was directed to proceed after the suits in Massachusetts courts were for a time suspended was not made for the benefit of the defendants therein, but solely from considerations involved in the policy of administration of the assets,—considerations to which those parties were strangers, and in which they had no right to intervene. Even now, we have no doubt, it would be entirely competent for this court, as against any objections the petitioners could make, to make any such modification of the order directing the receiver to proceed with the collection of these assets, in respect to the disposition of the funds, as it might seem equity would require. Of these consolidated causes that instituted by the creditors at least is still pending, and the orders of the court are under its control. Moreover, it is competent to make any new order therein as justice may require. These suggestions are made to show how unfounded are the pretensions of the petitioners to make a contest upon the footing of the order directing the enforcement of their liability.

Another ground advanced for the petitioners is that the decision of the supreme judicial court of Massachusetts in the suits there "misses the real point in the case," meaning a point raised by argument of counsel here, namely, that the lands in question were already owned and held by the promoters before the organization of the company was undertaken, in which case it is contended that the promoters would be liable only for the difference between the amount of their stock subscription and the value of the land conveyed in payment therefor. That doctrine, however, does not apply where, as in this case, the purpose to form a corporation to take the lands or property was part of the scheme in pursuance of which they were purchased or acquired by the promoters. But it can hardly be seriously supposed that such a question can now be raised. At all

events, it is quite manifest that we cannot review the decision there of a question which has become res judicata; nor, indeed, any question affecting the liability of defendants in those suits. We shall not, however, forbear to say that we discover no ground whatever for the criticism of counsel of that decision, which is in harmony with the doctrine of Yeiser v. Paper Co., 46 C. C. A. 567, 107 Fed. 340, 52 L. R. A. 724, where the subject of the liability of promoters for wrongs done to incipient corporations was fully considered by the circuit court of appeals for this circuit, and the case of Hayward v. Leeson, 176 Mass. 310, 57 N. E. 656, 49 L. R. A. 725, was cited and approved. It is true, as urged by counsel for petitioners, that in a case of doubt, and when it appears to be necessary to preserve the status quo of the subject of controversy until the final hearing, the court will grant a preliminary injunction to that end. But, as we entertain no doubt that the petition is destitute of equity, we should not be justified in staying the receiver in prosecuting the suits in Massachusetts to final judgment.

The preliminary injunction prayed for will therefore be denied.

Judge THOMPSON concurs in this opinion.